THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. INEZ MARIE YOUNG, Defendant-Appellant.

Fourth District   No. 4—85—0098

Opinion filed October 30, 1985.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Robert J. Biderman and Peter C. Drummond, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant pleaded guilty to retail theft with a prior theft, a Class 4 felony, and was sentenced in September 1984 to one year of intensive probation supervision. (See Ill. Rev. Stat. 1983, ch. 38, pars. 16A—3(a), 16A—10(2).) Her probation was revoked after hearing, and she was sentenced to three years' imprisonment. She appeals from the judgment of the circuit court of Macon County, arguing that the trial court erred in sentencing her for the revoking offenses rather than the offense for which she was originally placed on probation.

As one of the conditions of defendant's probation, she was ordered to perform 130 hours of community service as directed by the probation office. In November 1984, several thefts occurred in the county building. During the time frame of the thefts, the defendant was working at the building on Wednesday nights as a community project through the Probation Plus program, and cleaned the floor on which the thefts occurred. On two occasions, postage stamps were

taken from Judge Sappington's office, from a container on his desk. In addition, a $20 bill was taken from the middle drawer of an unlocked desk in the purchasing office. On questioning after *Miranda* warnings, defendant admitted to investigators that while working on the assigned floor, she had taken stamps on two occasions and had also taken the $20 bill. A report of violation of intensive probation supervision was filed on December 5, 1984. The allegations of the petition were found proved after hearing on January 9, 1985, and the court proceeded to sentencing.

The State presented no evidence in aggravation, and asked that the defendant be sentenced to three years' imprisonment, the maximum sentence for the original offense (see Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(7)). The presentence report included the following as adult offenses of the defendant apart from the 1984 theft for which she was placed on intensive probation supervision:

| Date | Offense | Case Number | Disposition |
| --- | --- | --- | --- |
| 4-16-71 | Theft by Deception | 71—CM—447 | Fined $75 plus $15 |
| 9-28-72 | Theft of Property Under $150 | 72—CM—1363 | Fined $25 plus costs |
| 4-3-74 | Theft of Property Under $150 | 73—CM—1101 | Fined $50 plus $15 |
| 6-18-74 | Theft of Services | 74—CM—636 | Fined $100 plus $27.40 |
| 2-11-75 | Theft of Property (Second Offense) | 75—CF—429 | 5 years probation |
| 8-10-77 | Violation of Probation | 75—CF—429 | 1-3 years DOC |
| 3-12-82 | Retail Theft with a Prior Theft Conviction | 81—CF—650 | 1 year DOC |

Defendant testified in mitigation that she recognized that she had a problem with stealing and said she had tried, without success, to obtain help for her problem through a mental health center. Defendant argued that, if imprisonment were imposed, a one-year term would be appropriate to the case.

In pronouncing sentence, the trial judge's remarks included the following:

> "THE COURT: Mrs. Young, the Court has heard the evidence. It has heard the arguments of counsel, the recommendations of both the *** Special Prosecutor, and your attorney, and it has heard your comments, your statement under oath. The Court notes that you have no record as a juvenile. *** *However, there are seven prior theft convictions.* You were offered

intensive supervision, and I think part of the conditions of your supervision was to clean the courthouse—county building, and during that period of time you took stamps and you took money out of the drawer. I think it commendable that you tried to go to Macon County Mental Health. I think that they were of little help to you. I think it is a tragedy. Maybe you could have been helped, I don't know. *There comes a point in time where after being given one chance after another, you fall short.* The Court has no other choice than to sentence you to the penitentiary. I don't know how much help you will receive at the penitentiary, but the Court has to consider the welfare and protection of the public. You understand that?

(Defendant nodding in the affirmative.)

THE COURT: Mrs. Young, after hearing the evidence, the Court is revoking your intensive probation/supervision. The Court further having a due regard for the character of the defendant, and the nature and circumstances of the offense, with public interest, finds a sentence of imprisonment is the most appropriate disposition.

In reaching that conclusion, it has taken into account Mrs. Young, your past criminal history and also the nature of the offense. It has taken into account that you did not act under strong provocation. You did not use the twenty dollars to buy food. You gave it away to one of your children. The stamps were used to mail Christmas cards. There were not substantial grounds tending to excuse or justify your criminal conduct, and it was not induced or facilitated by someone else. It was your idea. I do not think that your criminal conduct was the result of circumstances unlikely to reoccur. I think that it will reoccur unless you decide to stop this conduct on your own. I don't think you have proven to the Court that you will not comply to the terms of further probation." (Emphasis added.)

On appeal, the defendant maintains that after revoking her probation, the trial court abused its discretion by sentencing her to a term of imprisonment for the revoking offenses, rather than for the offense for which she was originally placed on probation, as shown by the court's remarks in the last quoted paragraph above. The original offense, to which the defendant pleaded guilty as charged, was theft from a retail establishment, (K-Mart)—two wrist watches, three hair roller sets, two bathing suits, and a Clairol Kindness Curly Perm.

■ When a defendant is admitted to probation and that probation is revoked, the trial court may sentence the defendant to any sen-

tence that would have been appropriate for the original offense. Prior decisions have stated that a defendant may not be sentenced on revocation of probation for the conduct which constituted the probation violation, and be thereby punished for it (*People v. Bullion* (1974), 21 Ill. App. 3d 297, 314 N.E.2d 731); but that it is proper for the trial court to consider the defendant's conduct on probation in assessing his rehabilitative potential (*People v. Strickland* (1974), 24 Ill. App. 3d 560, 321 N.E.2d 309; *People v. Brogan* (1979), 76 Ill. App. 3d 957, 395 N.E.2d 408; *People v. Tatum* (1975), 29 Ill. App. 3d 251, 330 N.E.2d 281; *People v. Clayton* (1977), 51 Ill. App. 3d 682, 366 N.E.2d 386). Decisions have referred to the "commingling" of matters, as between the original offense and the conduct constituting the probation violation, as improper on sentencing after probation revocation. See, *e.g.*, *People v. White* (1968), 93 Ill. App. 2d 283, 288, 235 N.E.2d 393, 396; *People v. Strickland* (1974), 24 Ill. App. 3d 560, 321 N.E.2d 309; *People v. Deskin* (1977), 47 Ill. App. 3d 328, 330, 361 N.E.2d 1188, 1189; *People v. Locey* (1977), 50 Ill. App. 3d 179, 181, 365 N.E.2d 1146, 1148; *People v. Maretti* (1978), 61 Ill. App. 3d 762, 764, 378 N.E.2d 342, 345. See generally Annot., 65 A.L.R.3d 1100 (1975).

In order to resolve the question presented in this appeal, we have reviewed the numerous decisions in this area. It is apparent that an approach merely stating that the trial court is permitted to consider the conduct which was the basis of the probation revocation as pertinent to the defendant's rehabilitative potential is, in application, of little assistance in determining whether error in fact occurred. Further, that approach has led to disparate results on similar facts, which suggests a need for an approach which permits of meaningful review. There is, for example, a marked contrast in the application of the aforementioned approach as between *People v. Clark* (1981), 97 Ill. App. 3d 953, 956-57, 424 N.E.2d 9, 11-12, and such decisions as *People v. Spencer* (1977), 52 Ill. App. 3d 378, 367 N.E.2d 315, *People v. Shockley* (1977), 54 Ill. App. 3d 1041, 370 N.E.2d 551, and *People v. Guiterrez* (1979), 71 Ill. App. 3d 895, 898, 390 N.E.2d 438, 440-41.

In *Clark*, the defendant was placed on probation for a burglary conviction, and probation was revoked in connection with an attack on a woman to take her purse. After the defendant was found guilty of that violation, he was sentenced to a term of five years' imprisonment. He appealed, arguing that the trial court had considered improper factors in its imposition of the sentence of imprisonment. The court vacated the sentence and found a new sentencing hearing was required, stating:

"[T]he court may consider as evidence in aggravation a defend-

*ant's conduct subsequent to the original conviction* where such evidence tends to reflect defendant's rehabilitation potential [citations], *but the record must demonstrate a determination based upon other factors as well.*" (Emphasis added.) 97 Ill. App. 3d 953, 956-57, 424 N.E.2d 9, 11.)

In affirming the judgment, the majority in *Spencer* emphasized that the offense which causes the revocation may be considered as constituting a part of the defendant's history and character and his possibilities for rehabilitation:

"In imposing sentence the court must take full cognizance of all factors relevant to the rehabilitation potential of the defendant. The sentencing judge is not required to close his eyes to defendant's conduct while on probation which reflects on his possibilities for rehabilitation." 52 Ill. App. 3d 378, 381, 367 N.E.2d 315, 317.

The analysis of the dissent in *Spencer* clearly shows the contrast between majority decision therein and the opinion in *Clark*, by stating:

"The judge made *no* reference to the nature and circumstances of the original offense. His only comments were directed to two factors: (1) the promise of a heavy sentence for a violation of probation, and (2) the acts leading to the revocation. While consideration of the defendant's acts which were in violation of probation was relevant to the court's determination to revoke the probation, it is an unavoidable conclusion that the court also intended the severe sentence as direct punishment for those acts." 52 Ill. App. 3d 378, 382, 367 N.E.2d 315, 318.

The *Shockley* court opined that if a defendant's conduct on probation reflects poorly on his rehabilitative potential, the trial court may impose a more severe sentence than that which it might have initially imposed. The court further stated:

"It is illogical to argue, as defendant does in this case, that conduct while on probation may not be considered in fixing punishment on the original conviction. Aside from the fact that defendant violated probation, the sentencing court would be confronted with the exact circumstances which originally led it to believe defendant to be a fit subject for probation. It would follow that the trial court's only alternative would be to place defendant on probation again. We do not believe the discretion of the sentencing court should be so absurdly circumscribed by such tortured logic." 54 Ill. App. 3d 1041, 1043, 370 N.E.2d 551, 553.

The trial court in *Guiterrez* had permitted the prosecutor, over defendant's objections, to recite the written probation violation and comment that the probation violation was based on the same type of offense for which the defendant had been admitted to probation. The *Guiterrez* court rejected the defendant's argument. The sentence imposed was found to be proportionate and commensurate with the offense originally committed based upon the defendant's potential for rehabilitation at that time and at the time of the hearing on the petition for revocation.

■■ ■ We next consider the statutory framework within which a defendant is sentenced after revocation of probation.

Section 5—6—4 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—4) provides in pertinent part:

> "(e) If the court finds that the offender has violated a condition at any time prior to the expiration or termination of the period, it may continue him on the existing sentence, with or without modifying or enlarging the conditions, or may impose any other sentence that was available under Section 5—5—3 at the time of initial sentencing.
>
> ⁚ * * *
>
> (h) Resentencing after revocation of probation, conditional discharge or supervision shall be under Article 4 [Ill. Rev. Stat. 1983, ch. 38, par. 1005—4—1 *et seq.*]." (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—6—4(e), (h).)

Section 5—4—1(a) of the Code provides that at the sentencing hearing, the court shall:

> "(1) consider the evidence, if any, received upon the trial;
>
> (2) consider any presentence reports;
>
> (3) consider evidence and information offered by the parties in aggravation and mitigation;
>
> (4) hear arguments as to sentencing alternatives;
>
> (5) afford the defendant the opportunity to make a statement in his own behalf * * *." (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—4—1(a)(1) through (5).)

Section 5—4—1 of the Code also provides as follows for the sentencing hearing:

> "(b) All sentences shall be imposed by the judge based upon his independent assessment of the elements specified above and any agreement as to sentence reached by the parties. * * *
>
> (c) In imposing a sentence for a felony, the trial judge shall specify on the record the particular evidence, information, factors in mitigation and aggravation *or other reasons that led to*

*his sentencing determination.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—4—1(b), (c).)

Under these subsections, the point at which the trial judge may not further refer to the conduct which was the basis for the revocation, without having the reference subject to characterization as "commingling" or error rather than as going to the rehabilitative potential of the defendant, is not discernible. Nevertheless, the sentences imposed upon defendants after revocation have been vacated, and the causes remanded for resentencing or sentences reduced based upon the conclusion that the trial court *may have* punished the defendant for the revoking offense rather than only for the original offense. (See, *e.g., People v. Bullion* (1974), 21 Ill. App. 3d 297, 314 N.E.2d 731; *People v. White* (1968), 93 Ill. App. 2d 283, 235 N.E.2d 393; *People v. Maretti* (1978), 61 Ill. App. 3d 762, 378 N.E.2d 342; *People v. Strickland* (1974), 24 Ill. App. 3d 560, 321 N.E.2d 309.) The analysis in these cases and, to a large extent in the "commingling" concept itself, is a trap for trial judges, conscientious as they may be, in enunciating the proper sentence after revoking a defendant's probation.

The trial court on sentencing after revocation of probation is authorized by statute to consider the defendant's conduct through the time of the sentencing hearing. Section 5—5—3.2(a)(3) of the Code specifies as an aggravating factor that "the defendant has a history of prior delinquency or criminal activity." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)(3).) Trial courts are authorized to consider offenses committed by the defendant at a sentencing hearing. In *People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344, the supreme court once again indicated that due process does not require that criminal trial rules of evidence be employed at a sentencing hearing. The supreme court also approved the admission into evidence at the sentencing hearing of other criminal conduct of the defendant. The supreme court stated:

"Whether a defendant had been prosecuted and convicted for other misconduct, proof of which is offered at a sentencing hearing, is not, in our judgment, controlling as to its admissibility. More important are the questions of relevancy and accuracy of the information submitted. Those questions are, of course, initially determined by the trial judge in the exercise of an informed discretion. Where, as here, that information indicates defendant solicited another to commit criminal offenses, and comes in the form of sworn testimony by the party solicited, presented in open court and subject to cross-examination, its admission by the trial judge is not an abuse of discretion. The

conduct testified to was relevant to a determination of a proper sentence in that it bore upon the likelihood or unlikelihood that defendant would commit other offenses; it appeared trustworthy; defendant had the opportunity to face and cross-examine the witness; and the accuracy of the information was not challenged." (88 Ill. 2d 482, 498-99, 431 N.E.2d 344, 351.)

This court in *People v. Ely* (1982), 107 Ill. App. 3d 102, 107, 437 N.E.2d 353, 357, referring to *La Pointe* stated:

"Evidence of criminal conduct which has not been the subject of prosecution and conviction is admissible at the sentencing hearing; however, the trial judge must exercise care to insure that the information is relevant and accurate."

Insofar as the sentencing hearing which follows revocation of probation, criminal activity which may have been the basis of the probation revocation amounts to *prior* criminal activity within the meaning of section 5—5—3.2(a)(3). See *People v. Ward* (1980), 80 Ill. App. 3d 253, 258-60, 399 N.E.2d 728, 732-33 (legislature has clearly directed a sentencing judge to consider past crimes as factors in aggravation when determining sentence for a contemporary conviction); see also *People v. Bankhead* (1984), 123 Ill. App. 3d 137, 462 N.E.2d 899.

In *Bankhead*, this court stated:

"[T]he supreme court has determined that at sentencing the introduction of evidence concerning a defendant's prior criminal conviction, as evidence in aggravation, does not violate the double jeopardy clause. (*People v. Eldredge* (1969), 41 Ill. 2d 520, 244 N.E.2d 151.) In such a case, the evidence of the criminal conduct is considered first in the proof to support the prior conviction and then in aggravation at the sentencing for the subsequent offense. Here, evidence of the criminal conduct was considered first *in aggravation* at the sentencing for another offense and then in proof of the instant offense. Logically, the sequence of the manner in which the evidence is considered should not determine whether the offender has been twice placed in jeopardy." (Emphasis added.) (123 Ill. App. 3d 137, 139, 462 N.E.2d 899, 900.)

In *Bankhead*, the defendant was charged with two counts of burglary. He had previously pleaded guilty to two unrelated counts of theft. At the sentencing hearing on the theft charges, the trial court sentenced defendant to concurrent terms of probation, with the condition that he serve 90 days' periodic imprisonment. The judge noted that the evidence concerning defendant's "subsequent criminal acts" was the only reason for the imposition of the term of periodic imprisonment.

The defendant was thereafter convicted of the offense of burglary, and sentenced to imprisonment. The issue in that case was stated as whether a trial court may properly sentence an individual for certain criminal conduct, having already considered such conduct as an aggravating factor in a prior sentencing hearing on unrelated charges. In holding the procedure used did not violate constitutional double jeopardy provisions, this court relied on *People v. Eldredge* (1969), 41 Ill. 2d 520, 244 N.E.2d 151, stating as the theory of that case that the defendant was being punished for the offense for which he was charged, and that consideration of the other offense in determining that punishment *did not amount to punishing him for the other offense. Bankhead* went on to state that this same rationale would adhere irrespective of whether evidence of the other offense was the sole reason for aggravating an offense, or only one of several reasons for doing so.

██ Misdeeds occurring up to the time of sentencing, whether before the finding of guilty or subsequent, are relevant in this respect, as they go to the defendant's "history and character"; and under prior law providing for indeterminate sentencing, evidence of such misdeeds were also relevant in fixing the maximum term of imprisonment. (*People v. Elsner* (1975), 27 Ill. App. 3d 957, 960, 327 N.E.2d 592, 595; *People v. Tatum* (1975), 29 Ill. App. 3d 251, 330 N.E.2d 281; see also *People v. Ford* (1972), 4 Ill. App. 3d 291, 293, 280 N.E.2d 728, 730; *People v. Mitchell* (1977), 53 Ill. App. 3d 1002, 1004, 369 N.E.2d 249, 251.) An analysis which suggests that the trial court (1) cannot consider the conduct which resulted in the probation being revoked, or (2) cannot consider such conduct past a certain point in the sentencing hearing, or (3) that thereafter a sentencing judge must specifically state that he nevertheless is sentencing the defendant solely on the basis of the original offense—and has considered the conduct which was the basis for the revocation only to the extent of the defendant's rehabilitative potential—is not only without merit but reflects a head-in-the-sand attitude. When the trial court originally imposed the sentence of probation, it made that determination on the basis of all of the records and reports available. Conduct which leads to revocation of probation has been regarded as a "breach" of the court's trust, or as otherwise causing the court to lose confidence in the defendant's rehabilitative potential. (See *People v. Harden* (1972), 6 Ill. App. 3d 172, 177, 284 N.E.2d 716, 719; *People v. Golston* (1971), 1 Ill. App. 3d 132, 134-35, 273 N.E.2d 614, 616.) The requirements upon a sentencing court, as applicable in sentencing after revocation as originally, were aptly discussed in *People v. Ford* (1972), 4 Ill. App.

3d 291, 293, 280 N.E.2d 728, 730-31, as remarked on favorably by this court in *People v. Elsner* (1975), 27 Ill. App. 3d 957, 959-60, 327 N.E.2d 592, 594-95.

■ Certainly where a defendant's probation is revoked due to a subsequent offense, he may be sentenced to a term of imprisonment to be served consecutively to the term of imprisonment imposed for the offense which constituted the violation of terms of probation. In *People v. Jones* (1985), 134 Ill. App. 3d 1048, 481 N.E.2d 726, the court rejected a defendant's argument that since, at the time of initial sentencing, he had no other convictions and hence no other sentences to serve consecutively to any period of imprisonment then imposed, a consecutive sentence was therefore not authorized upon revocation, as it could not have been imposed at the time of initial sentencing. In *People v. Nelson* (1962), 26 Ill. 2d 337, 186 N.E.2d 362, the defendant was sentenced to a term of imprisonment for assault with intent to commit murder after probation was revoked, to be served consecutive to the term imposed for the manslaughter (committed during the probation). With respect to defendant's argument that he was not fully apprised of the extent of his original plea of guilty (assault), the supreme court stated:

> "The trial court could not have anticipated at that time that defendant would commit the crime of involuntary manslaughter, or any other crime in the future, to warrant the inclusion of a reference to a possible consecutive sentence. There is no requirement that the court must, before accepting a plea of guilty, contemplate and apprise defendant of all future contingencies which could conceivably affect his sentence." (26 Ill. 2d 337, 340, 186 N.E.2d 362, 364.)

The *Jones* court also looked to the fact that the sentencing court candidly admitted that it had made a mistake in initially sentencing the defendant to probation, as well as to the fact that imposition of sentence is a matter of judicial discretion and not to be disturbed on review absent an abuse. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.

Consistent with approving the trial court's action is the legislative authority in resentencing when a sentence is set aside on direct review or on collateral attack. Section 5—5—4 of the Code provides that the trial court cannot impose a more severe sentence "unless the more severe sentence is based upon conduct on the part of the defendant *occurring after the original sentencing.*" (Emphasis added.) Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—4. See *People v. Taylor* (1975), 25 Ill. App. 3d 4, 6, 322 N.E.2d 567, 569; see also *People v.*

*Heise* (1966), 35 Ill. 2d 214, 218-19, 220 N.E.2d 438, 441; *People v. Gulley* (1952), 411 Ill. 228, 231-32, 103 N.E.2d 650, 652.

A defendant placed on probation is made an involuntary, but identifiable part of our law enforcement system. The manner in which a defendant conducts himself or herself while on probation is an appropriate consideration in any sentencing hearing. In view of the standard of discretion to be accorded sentencing determinations (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882), such determinations as follow upon the revocation of probation ought not be more easily overturned than sentencing determinations generally. The remarks of the trial court at sentencing must be taken in context, and read in their entirety, including arguments of counsel. (*People v. Newell* (1982), 105 Ill. App. 3d 330, 334, 434 N.E.2d 349, 353; *People v. Locey* (1977), 50 Ill. App. 3d 179, 182, 365 N.E.2d 1146, 1148.) We conclude, and now state explicitly as the approach upon review of such questions, that a sentence within the statutory range for the original offense will not be set aside on review *unless* the reviewing court is strongly persuaded that the sentence imposed after revocation of probation was *in fact* imposed as a penalty for the conduct which was the basis of revocation, and *not* for the original offense. The sentence was imposed for the original offense. The testimony presented, the presentence report, the prior record of the defendant, and the conduct which was the basis of the revocation justify the sentence imposed.

In summary, the trial court can consider conduct of the defendant up to the time of sentencing, which includes the conduct which resulted in the revocation, as an element in determining an appropriate sentence.

To the extent that this decision is contrary to prior decisions of this court, those prior decisions are overruled.

Affirmed.

GREEN, P.J., and TRAPP, J., concur.